**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
WACHOVIA MORTGAGE,

                     Appellant,

           -against-

SONIA L. SMOOT,

                     Appellee.
---------------------------------------------------------X
PNC BANK, N.A.

                     Appellant,

           -against-

JOSEPH CONTRINO,

                     Appellee.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-06379 (ADS)

11-CV-03832 (ADS)

## APPEARANCES:

**Rosner Nocera & Ragone, LLP**
*Attorneys for the Appellant Wachovia Mortgage*
110 Wall Street
23rd Floor
New York, NY 10005
      By: John P. Foudy, Esq., Of Counsel

**Law Offices of Jonathan M. Rosen**
*Attorneys for the Appellee Sonia L. Smoot*
310 Old Country Road
Suite 104
Garden City, NY 11530
      By: Russell David Daly, Esq., Of Counsel

**Weltman Weinberg & Reis Co., L.P.A.**
*Attorneys for the Appellant PNC Bank, N.A.*
175 S Third St Suite 900
Columbus, OH 43215
      By: Geoffrey J. Peters, Esq., Of Counsel

**Scott R. Schneider, Esq.**
*Attorney for the Appellee Joseph Contrino*
117 Broadway
Hicksville, NY 11801

**SPATT, District Judge**.

Presently before the Court are two distinct appeals from the Bankruptcy Court that pose precisely the same issue: whether a debtor who has filed for Chapter 7 bankruptcy may "strip off" the lien of a junior mortgage pursuant to 11 U.S.C. § 506(d), when the outstanding balance due on a senior mortgage exceeds the fair market value of the secured property. Because the appeals are identical, they will be addressed simultaneously. For the reasons set forth below, namely because of binding Supreme Court precedent, the Court reverses the Bankruptcy Court determinations.

## I. BACKGROUND

Before delving into the Bankruptcy Court decisions that underlie the present appeals, it is necessary to fully set forth the dispute that is before this Court.

As will be further explored below, this controversy is the result of a clash between two distinct lines of cases; two separate bankruptcy chapters; and different provisions of the Bankruptcy Code. The question presented is whether a debtor in a Chapter 7 proceeding may "strip off"(or cancel) a junior lien on their residential property, when the value of the property at the time of the bankruptcy filing is less than the amount due under a senior mortgage. In other words, can a Chapter 7 debtor avoid liability on a totally "underwater" second mortgage? This question hinges on the interpretation of one particular provision in the Bankruptcy Code—11 U.S.C. § 506(d)—which states that a lien that secures a claim against the debtor is void unless it is an "allowed secured claim".

The Supreme Court has twice faced the issue of whether in bankruptcy a debtor may strip off a mortgage on their residential property.  See Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) and In re Nobelman, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993).  However, both of these cases address whether an *undersecured senior* mortgage may be "stripped down", meaning that there was some collateral underlying the lien.  Whether this distinction is a significant one and thus whether these cases control the present dispute, forms the crux of the debate.  To further complicate matters, Dewsnup arose in the Chapter 7 context and relied solely on the Court's interpretation of the phrase "allowed secured claim" in § 506(d).  On the other hand, Nobelman arose in the Chapter 13 context and thus interpreted a Chapter 13 specific statute—§ 1332—and defined "allowed secured claim" in light of § 506(a), which the Dewsnup Court did not do.  Whether the bankruptcy chapter the debtor is proceeding under is dispositive is another issue that muddies this dispute.

The two bankruptcy decisions that led to the present appeals both disregarded the Dewsnup precedent—although it arose in the same Chapter 7 context—and found that a debtor may strip off a wholly unsecured junior mortgage.  However, as will be explained below, this is the minority view.  Most of the courts that have faced this issue have found Dewsnup to be controlling; that the undersecured versus unsecured distinction was insignificant; and consequently that a debtor may *not* strip off a wholly unsecured junior mortgage.

With this framework in mind, the Court now turns to a review of the underlying bankruptcy determinations and will then analyze the legal issues presented.

## A. The Wachovia Appeal

The facts relevant to Wachovia Mortgage v. Sonia Smoot (the "Wachovia Appeal") are undisputed.  On September 20, 2006, Sonia Smoot ("Smoot") purchased the real property located

at 115-38 238th Street, Elmhurst, NY 11003 (the "Wachovia Property"). In order to finance this purchase, Smoot entered into a transaction with World Savings Bank, a predecessor of Wachovia Mortgage ("Wachovia"), for a first mortgage in the original principal amount of $349,800.00 (the "First Lien Mortgage"). In addition, Smoot obtained a home equity line of credit in the original principal amount of up to $69,960.00, secured by a credit line mortgage (the "Credit Line Mortgage"). Both of these mortgages were perfected and recorded in the Nassau County Clerk's Office.

On August 30, 2010, Smoot filed a petition for bankruptcy relief under Chapter 7. (Case No. 10-76793). On November 5, 2010, she commenced an adversary proceeding against Wachovia in connection with the two mortgages, requesting the Bankruptcy Court to deem the Credit Line Mortgage as a wholly unsecured claim and thus declare the entire subordinate mortgage lien to be declared null and void. (Adv. Pro. No. 10-8750). At the time, the total balance due on the first mortgage lien was $370,601.02, and the total balance due on the credit line mortgage was $70,749.67. Smoot's appraisal of the Wachovia Property valued it at $340,000.00, while Wachovia's appraisal valued it at $325,000.00. Thus, under either appraisal, the balance due on the First Lien Mortgage exceeded the value of the Property.

In the adversary proceeding, Smoot and Wachovia filed cross-motions for summary judgment. The only inquiry before the Bankruptcy Court was whether the Credit Line Mortgage could be voided, i.e., "stripped off", pursuant to 11 U.S.C. § 506. The Bankruptcy Court first assessed whether the Credit Line Mortgage, which was based on a home equity line of credit, should be treated the same as a traditional mortgage. After some analysis, not relevant here, the Bankruptcy Court concluded that the Credit Line Mortgage should be treated the same as any other mortgage lien.

On the basis of the determination that there were two mortgage liens, the Bankruptcy Court then went on to address the more fundamental question of whether the Credit Line Mortgage could be "stripped off" under the Bankruptcy Code. Under 11 U.S.C. § 506(d), a lien that secures a claim that is not an "allowed secured claim" is void. Thus, the Bankruptcy Court needed to determine whether the Credit Line Mortgage was an "allowed secured claim" under the Bankruptcy Code. The Court looked to the Supreme Court precedents of <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) and <u>In re Nobelman</u>, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993), in which debtors had sought to "strip down" an undersecured primary mortgage lien to the value of the underlying collateral. As stated above, <u>Dewsnup</u> arose in the Chapter 7 context, and <u>Nobelman</u> arose in the Chapter 13 context.

After acknowledging this relevant precedent, the Bankruptcy Court chose not to follow either case for guidance, finding that "both decisions were limited to [their] specific facts and thus, these cases should be narrowly construed." (Wachovia Order at 4.) In particular, the Court found that neither case dealt with the "stripping off" of a subordinate lien that was wholly unsecured by any value in the debtor's property.

Instead, the Bankruptcy Court relied upon the Second Circuit decision of <u>In re Pond</u>, 252 F.3d 122 (2d Cir. 2001), as the present controlling precedent for a debtor's ability to "strip off" a subordinate mortgage lien that is wholly unsecured. While the <u>Pond</u> case stands for the proposition that a wholly unsecured subordinate mortgage lien can be declared void under section 506(d) only in a Chapter 13 case, the Bankruptcy Court applied its holding to the Chapter 7 context it faced. The Court referred to its previous decision in <u>In re Lavelle</u>, No. 09 Civ. 72389, 2009 Bankr. LEXIS 3795 (Bankr. E.D.N.Y. Nov. 25, 2009), where it stated that "[t]he plain meaning is applied to Chapter 13 section 1322(b)(2) analysis where the lien is wholly

unsecured, and there is no logical reason to read the text differently when applied to chapter 7 wholly unsecured liens." <u>Lavelle</u>, 2009 Bankr. LEXIS 3795, at *16.

The Bankruptcy Court then went on to discuss the rationales other courts had used to preclude such lien stripping in the Chapter 7 context. With regard to whether it would result in a windfall to the debtor at the expense of the creditor, the Bankruptcy Court looked again to <u>Pond</u> and noted that "any windfall to a chapter 7 debtor as a result of avoidance of a wholly unsecured mortgage lien would not be greater than the debtor would have received if the debtor had filed for chapter 13 relief instead." (Wachovia Order at 9.) Moreover, the Bankruptcy Court noted that while a subordinate mortgage lien is consensual and "bargained for", it was questionable that such a mortgage lien holder bargained for different treatment of its lien under different chapters of the Bankruptcy Code with the debtor having control of the type of bankruptcy relief sought. Finally, the Bankruptcy Court found no significant difference between the two bankruptcy chapters that would warrant different treatment of a wholly subordinated mortgage lien under the same section of the Bankruptcy Code, concluding that there was no reason why the holding in <u>Pond</u> could not be extended to Chapter 7 cases.

In sum, the Bankruptcy Court concluded that where the amount outstanding on the first mortgage is greater than the value of the Property, the lienholder's subordinate Credit Line Mortgage is wholly unsecured pursuant to section 506(a). Because such Credit Line Mortgage is wholly unsecured, it held such mortgage lien to be null and void pursuant to section 506(d) and the mortgage claim shall be recharacterized as a general unsecured claim against the Debtor's bankruptcy estate.

## B. <u>The PNC Appeal</u>

Similar to the Wachovia Appeal, all of the facts relevant to PNC Bank, N.A. v. Joseph Contrino (the "PNC Appeal") are undisputed. Joseph Contrino ("Contrino") is the owner of real property located at 195 Howard Street, Port Jefferson Station, New York 11776 (the "PNC Property"). On January 19, 2011, Contrino filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. As of that date, the PNC Property was encumbered by a first mortgage held by Bank of America, and a second mortgage held by the Appellant PNC. The first mortgage had an approximate balance of $309,457.20, while the second mortgage had an approximate balance of $38,186.72. However, at the time of Contrino's initial filing for relief with the Bankruptcy Court, the value of this property was estimated only to be about $290,000.00. Therefore, as in the Wachovia Appeal, the amount due under the first mortgage exceeded the approximate fair market value of the home as of the time of the bankruptcy filing.

On March 17, 2011, Contrino filed a Complaint against PNC, requesting the Bankruptcy Court to: (1) declare PNC, the second mortgage holder, as having a wholly unsecured claim and to declare PNC's lien null and void; (2) direct the Clerk of Suffolk County to cancel and discharge PNC's mortgage lien; and (3) for other and further relief as the Court deemed just, proper, and equitable. On April 21, 2011, PNC filed its Answer to Contrino's Complaint. PNC subsequently argued that a debtor such as Contrino could not avoid a second lien mortgage in a Chapter 7 bankruptcy case, merely because the value of the home at the time of the bankruptcy filing exceeded the amount due under the first lien mortgage.

On June 14, 2011, the Bankruptcy Court ordered that the lien debt created by the second lien of PNC was deemed wholly unsecured; that the mortgage lien of PNC was deemed null,

voided, and released; and that the Clerk of Suffolk County was directed to cancel and discharge the mortgage lien of PNC.

## II. DISCUSSION

### A. <u>Legal Standard of Review on a Bankruptcy Appeal</u>

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. Fed. R. Bankr. P. 8013. The standard of review in a bankruptcy appeal is plenary. <u>In re MarketXT Holdings Corp.</u>, 346 Fed App'x 744, 745 (2d Cir. 2009). The reviewing court "review[s] the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous, but reviewing its conclusions of law *de novo*." <u>Ball v. A.O. Smith Corp.</u>, 451 F.3d 66, 69 (2d Cir. 2006).

### B. <u>The Bankruptcy Code</u>

As a preliminary matter, in order to fully review the relevant case precedent and to properly analyze the legal issue presented, it is useful to set forth the main differences between bankruptcy proceedings under Chapter 7 and Chapter 13.

Chapter 7 is known as the "liquidation chapter". In Chapter 7 bankruptcy proceedings, a court typically appoints a trustee, who is responsible for a number of duties, including "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and clos[ing] such estate as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1) (2006). Thus, prior to any liquidation, a trustee is responsible for identifying the property of the debtor estate (<u>id.</u> § 541) and determining whether the creditors' claims are secured or unsecured. <u>Id.</u> § 506 ("An allowed claim . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such

allowed claim.").  Once the secured creditors' claims are paid, the trustee will liquidate the debtors' assets and distribute the remaining funds to unsecured creditors.  11 U.S.C. § 726 (2006).

Generally, most chapter 7 cases are actually no asset cases, meaning that there is nothing to liquidate and unsecured creditors are never repaid.  Liquidation Under the Bankruptcy Code, U.S. CTS., http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyBasics/Chapter7.aspx (last visited Sept. 6, 2012).  "The goal of the distribution scheme in Chapter 7 liquidations . . . is to ensure that all parties have an opportunity to collect from the estate's limited assets."  In re Osborne, 76 F.3d 306, 310 (9th Cir. 1996).  However, debtors with "regular income", as the term is defined in 11 U.S.C. § 109(e), who do not pass the Chapter 7 "means-testing" eligibility test when they earn more than a certain disposable income, must instead file under Chapter 13.

Chapter 13 is known as the "repayment chapter".  In this type of bankruptcy proceeding, a debtor is intended to utilize post-petition income to repay pre-petition debts.  Thus, this chapter focuses on a reorganization plan, in which the debtor has a blueprint from which to repay his or her creditors.  See In re Osborne, 76 F.3d 306, 310 (9th Cir. 1996) ("The debtor is required to file a plan which provides for the submission of all or a portion of her or his future earnings to the supervision and control of a trustee.").  The repayment plans under Chapter 13 last for three to five years.  11 U.S.C. §§ 1325(b), 1322(d)(1)–(2).  "The purpose of Chapter 13 is 'to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor.'"  In re Tomlan, 102 B.R. 790, 792 (E.D. Wash. 1989) (quoting Sen. Rept. No. 95–989, Pub. L. 95–598, 92 Stat. 2549, 95th Cong., 2d Sess. (1978), p. 141, reprinted in U.S. Code Cong. & Admin. News 1978 at 5787, 5927).

Generally, Congress indicated a preference in the Bankruptcy Code for individual debtors to use Chapter 13 instead of Chapter 7.  In re Woolsey, __ F.3d. __, 2012 WL 3797686, at *9 (10th Cir. 2012); see In re McDonald, 205 F.3d 606, 614 (3d Cir. 2000) (noting that courts have "repeatedly emphasized Congress's preference that individual debtors use Chapter 13 instead of Chapter 7.").  Congress's stated purpose for Chapter 13 was "to retain the pride attendant" on satisfying a repayment plan rather than face the "stigma" of liquidation.  H.R. Rep. No. 95–595, at 118 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6079.

The Court's analysis also necessarily involves particular provisions of the Bankruptcy Code.  Specifically, the Court will look to sections §§ 506(a) and (d), upon which the debtors and the Bankruptcy Court relied.  Bankruptcy Code § 506(a)(1) provides, in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).  Bankruptcy Code § 506(d) provides

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

## C. **The Supreme Court Precedents**

As stated above, there are two relevant Supreme Court cases which have addressed a distinguishable but undeniably related issue:  whether a debtor may "strip down" an undersecured primary mortgage, meaning that the value of the lien exceeded the value of the home at the time of the bankruptcy filing.  "The term 'strip down' is used when a mortgage is partially secured and partially unsecured, while the term 'strip off' [as in the instant case] is used when a junior mortgage is totally unsecured."  In re Fitzmaurice, 248 B.R. 356, 357 n.2 (Bankr. W.D. Mo. 2000).  As stated, Dewsnup dealt with this question in the context of a Chapter 7 bankruptcy proceeding, while Nobelman addressed it within the framework of a Chapter 13 bankruptcy proceeding.  To be sure, neither case addressed the precise question of whether a wholly unsecured—not a partially secured—junior mortgage could be completely "stripped off", rather than being "stripped down" to the value of the underlying collateral.  Nevertheless, these cases are instructive and are heavily relied upon or distinguished by every court to have faced the pending dispute.  Thus, this Court will review both decisions.

### 1. **Dewsnup v. Timm**

In 1992, the Supreme Court decided the case of Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992).  There, the Chapter 7 debtor, Dewsnup, had commenced an adversary proceeding to determine the validity and extent of Timm's lien on his property, which totaled approximately $120,000.  At the time of the bankruptcy filing, the land was valued far below the amount of the debt.  Thus, Dewsnup requested the Bankruptcy Court to reduce the lien to the fair market value of the land under § 506(d) of the Bankruptcy Code, which states that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void".  The Bankruptcy Court declined to grant this relief.

The question faced by the Supreme Court was whether this primary undersecured mortgage should be considered an "allowed secured claim" under § 506(d), so that the debtor would be able to "strip down" the debt to the fair market value of the land. "In its analysis, the Court laid out in detail the different readings that could be given to the thorny statutory interpretation question presented by the perceived interplay of §§ 506(a) and 506(d)." In re Talbert, 344 F.3d 555, 558 (6th Cir. 2003). The debtor argued that §§ 506(a) and 506(d) are complementary and should be read together. Accordingly, the debtor maintained that because under § 506(a) a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed, it could void the lien on the property pursuant to § 506(d) to the extent the claim was no longer secured and thus was not "an allowed secured claim." In other words, the debtor contended that an unsecured claim could be bifurcated into secured and unsecured portions, so that any portion of an allowed claim deemed to be unsecured under § 506(a) is not an "allowed secured claim".

On the other hand, the lien holder asserted that § 506(d) should be interpreted without reference to § 506(a), because that clause is not a definitional provision. According to Timm, "§ 506(a) performs the function of classifying claims by true secured status at the time of distribution of the estate to ensure fairness to unsecured claimants." Id. at 777. Conversely, the lien holder argued that the lien-voiding in § 506(d) is directed to the time at which foreclosure is to take place. Thus, it contended that the phrase "allowed secured claim" should be read term-by-term so that a claim must be first, allowed, and then second, secured. Timm maintained that its debt was secured because there was a lien with recourse to the underlying collateral, and therefore, regardless of the value of the underlying collateral, the claim did not come within the scope of § 506(d).

Writing for the majority, Justice Blackmun first acknowledged that § 506 of the Bankruptcy Code and its relationship with other provisions of the Code embraced some ambiguities. Nevertheless, he agreed with the lender's position and held "that § 506(d) does not allow petitioner to 'strip down' [Timm's] lien, because [Timm's] claim is secured by a lien and has been fully allowed pursuant to § 502." Id. at 417. The Court found that the words "allowed secured claim" did not embody the same meaning in § 506(d) as in § 506(a). Thus, the Court expressly found that § 506(a) was not to be followed in a Chapter 7 proceeding.

The Court based this determination on several grounds. First, it found that the debtor's position—to freeze the creditor's secured interest at the judicially determined valuation—would practically result in a "windfall" to the benefit of the debtor if there was an increase in the value of the property by the time of the foreclosure sale. In this regard, it was noted that the mortgagor bargained with the mortgagee for its lien to stay with the real property until foreclosure. Second, the Court stated that Congress likely did not intend to depart from the pre-Code rule that a creditor's liens on real property pass through bankruptcy unaffected. See Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another-namely, an action against the debtor *in rem*").

## 2. **Nobelman v. American Savings Bank**

In Nobelman v. American Savings Bank, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993), the Supreme Court addressed a similar issue to Dewsnup. In Nobelman, American Savings Bank had loaned the Nobelmans money to purchase their principal residence, in exchange for a note payable to the bank and secured by a deed of trust on the property. As in Dewsnup, the amount of the mortgage debt exceeded the value of the home at the time the

Nobelmans filed for bankruptcy. However, unlike in <u>Dewsnup</u>, the Nobelmans filed a Chapter

13 bankruptcy petition, not a Chapter 7 petition. The debtors then attempted to "strip down"

American's lien, in essence arguing for bifurcation of the undersecured claim and contending

that the remainder of the bank's claim should be treated as unsecured. The Chapter 13 Trustee

and the bank objected. The Bankruptcy Court agreed with the Trustee and bank, and denied

confirmation of the plan.

Similar to the factual scenario in <u>Dewsnup</u>, a debtor was attempting to strip down an

undersecured primary mortgage. However, <u>Nobelman</u> arose in the Chapter 13 context and hence

addressed a different portion of the Bankruptcy Code—namely, § 1332(b)(2). Section

1322(b)(2) allows modification of the rights of both secured and unsecured creditors under a

debtor's repayment plan, subject to special protection for creditors whose claims are secured

only by a lien on the debtor's home. <u>See</u> 11 U.S.C. § 1322(b)(2) (providing that a plan may

"modify the rights of holders of secured claims, *other than a claim secured only by a security*

*interest in real property that is the debtor's principal residence*, or of holders of unsecured

claims, or leave unaffected the rights of holders of any class of claims.") (emphasis added).

In <u>Nobelman</u>, the Court agreed with the debtors and found that a court must look first to

Section 506(a)—a provision that was distinguished and disregarded in <u>Dewsnup</u>—for a judicial

valuation of the collateral to determine the status of the bank's secured claim. In this case, there

was some value that was underlying the claim. Consequently, the Court found that "by virtue of

its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a

lien on petitioners' home", even if it was undersecured. <u>See Nobelman</u>, 508 U.S. at 329, 113 S.

Ct. 2106 ("however, that determination does not necessarily mean that the "rights" the bank

enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its

secured claim."). Thus, the Court found that even though the mortgage was undersecured, the bank's "rights" pursuant to § 1332 were "reflected in the relevant mortgage instruments . . . [including] the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." Id. As in Dewsnup, the Court explained that these are the rights that were "bargained for by the mortgagor and the mortgagee". Id. In sum, the Court held that

> to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

Id. at 332.

Thus, in interpreting the distinct statutory predicate in Chapter 13 cases that debtors cannot modify the "rights" of holders of claims secured only by the debtors' principal residence, the Court held that Chapter 13 debtors could not bifurcate an undersecured homestead mortgagee's claim into a secured claim and an unsecured claim, and therefore were unable to "strip down" or reduce the mortgage to the fair market value of the mortgaged residence.

**D. Post-Dewsnup Cases: Stripping Off in the Chapter 13 Context**

The precise issue before the Court—whether a wholly unsecured junior mortgage may be stripped off pursuant to § 502(d) in a Chapter 7 proceeding—is presently an open question in the Second Circuit. However, many district courts and circuit courts have almost uniformly affirmed this mechanism in the Chapter 13 context. The Second Circuit itself has ruled that such a lien avoidance in the Chapter 13 realm is permissible.

In In re Pond, 252 F.3d 122 (2d Cir. 2001), the Second Circuit held that a Chapter 13 debtor could strip off a wholly unsecured inferior mortgage lien against the debtor's residence. In particular, the Court found that if there was no collateral value underlying the junior mortgage lien, then the claim was not secured for purposes of 506(a). Accordingly, the mortgagee was not the holder of a claim secured by a security interest in the debtor's principal residence, so its rights were not were protected under the anti-modification provision of Section 1322(b)(2).

At first glance, it is arguable that the decision in Pond rendered Dewsnup irrelevant and thus informs this Court's analysis. In particular, one could interpret the Second Circuit's Pond opinion as embracing the notion that the value of the collateral underlying a lien is determinative of whether it is "secured". See id. at 126 (dismissing the bank's argument that its claim was "secured" under 506(a) because New York law provides lienholders with *in rem* rights that have "value" over and above the equity in the property underlying a lien).

However, upon closer inspection, the Second Circuit's determination was solely based upon the specific statutory provision of § 1332(b)(2)—relevant only in Chapter 13 bankruptcy proceedings—and § 506(a), which was expressly rejected as controlling in Chapter 7 cases in Dewsnup. See id. at 126 ("We conclude from [the] language [of Nobelman], as well as the language of the statute, that the antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value—after accounting for other encumbrances that have priority over the lien—so that the lien is at least partially secured under Section 506(a). . . . We therefore [hold] that a wholly unsecured claim, as defined under Section 506(a), is not protected under the antimodification exception of Section 1322(b)(2).").  Thus, the problem with relying on Pond and any other precedent that permits stripping off in the Chapter 13 context, is that there is a "unique statutory predicate of Chapter

13." <u>In re Grano</u>, 422 B.R. 401, 403 (Bankr. W.D.N.Y. 2010). As explained by another

bankruptcy court in this district, <u>In re Grano</u>, 422 B.R. 401, 403 (Bankr. W.D.N.Y. 2010):

> In the present instance, Mr. and Mrs. Grano contend that this court should adopt for Chapter 7 the same exception that the Second Circuit has recognized for cases in Chapter 13, to the effect of permitting the avoidance of secondary liens that are totally undercollateralized. Unfortunately, this argument overlooks the unique statutory predicate of Chapter 13. In allowing a debtor in Chapter 13 to avoid a fully unsecured homestead mortgage, the decision in <u>In re Pond</u> utilized the authority of 11 U.S.C. § 1322(b)(2). No parallel provision applies in Chapter 7. Rather, the holding of <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) continues to bind debtors in Chapter 7. Notwithstanding the absence of equity beyond superior liens, the debtors may not here avoid the second mortgage of Wells Fargo Bank, N.A.

<u>Id.</u>

**E. <u>Post-Dewsnup Cases: Stripping Off in the Chapter 7 Context</u>**

As set forth above, the issue presented to this Court is still an open question in the Second

Circuit. However, the majority of the courts to have confronted the issue have reached a

contrary conclusion than the Bankruptcy Court in this case. <u>See, e.g.</u>, <u>In re Talbert</u>, 344 F.3d 555

(6th Cir. 2003); <u>Ryan v. Homecomings Fin. Network (In re Ryan)</u>, 253 F.3d 778 (4th Cir. 2001);

<u>Laskin v. First National Bank of Keystone (In re Laskin)</u>, 222 B.R. 872 (9th Cir. BAP 1998); <u>In</u>

<u>re Richins</u>, 469 B.R. 375 (Bankr. D. Utah 2012); <u>Cook v. IndyMac Bank (In re Cook)</u>, 449 B.R.

664 (D.N.J. 2011); <u>In re Immel</u>, 436 B.R. 538 (Bankr. N.D. Ill. 2010); <u>In re Caliguri</u>, 431 B.R.

324 (Bankr. E.D.N.Y. 2010) ("Post- <u>Dewsnup</u> courts have generally interpreted <u>Dewsnup</u> to

prohibit chapter 7 debtors from avoiding (stripping off) liens which are wholly undersecured for

the same reasons that a chapter 7 debtor may not reduce a secured mortgage claim to the fair

market value of the property (stripping down)."); <u>In re Grano</u>, 422 B.R. 401 (Bankr. W.D.N.Y.

2010); <u>In re Pomillo</u>, 425 B.R. 11 (Bankr. E.D.N.Y. 2010); <u>In re Spears</u>, 421 B.R. 47 (Bankr.

W.D.N.Y. 2009).  But see In re McNeal, No. 11 Civ. 11352, 2012 WL 1649853 (11th Cir. May 11, 2012).

For instance, in In re Talbert, 344 F.3d 555 (6th Cir. 2003), the debtors filed an adversary proceeding against City Mortgage Services to avoid its approximate $33,110 lien on their residence pursuant to § 506(d).  The fair market value of the real property was $88,000, but it was encumbered by a first mortgage in the amount of $90,633.  The Debtors contended that the secured status of City Mortgage's claim was determined by § 506(a); that pursuant to this provision their junior lien was completely unsecured; and thus, according to § 506(d), the junior lien could be "stripped off".  The Sixth Circuit reviewed the Dewsnup decision, and explained:

> [t]hree considerations constituted the analytical underpinnings of the Court's holding, namely, that: (1) any increase in the value of the property from the date of the judicially determined valuation to the time of the foreclosure sale should accrue to the creditor; (2) the mortgagor and mortgagee bargained that a consensual lien would remain with the property until foreclosure; and (3) liens on real property survive bankruptcy unaffected.

Id. at 559.

The Talbert court then went on to find that "[t]he Supreme Court's reasoning for not permitting 'strip downs' in the Chapter 7 context applies with equal validity to a debtor's attempt to effectuate a Chapter 7 'strip off.'"  Id. at 560 (citing Ryan v. Homecomings Fin. Network (In re Ryan), 253 F.3d 778, 782 (4th Cir. 2001) ("[W]e discern no principled distinction to be made between the case sub judice and that decided in Dewsnup.  The Court's reasoning in Dewsnup is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than . . . strip down, an approved but unsecured lien."); In re Webster, 287 B.R. 703, 708 (Bankr. N.D. Ohio 2002) ("Contrary to [another] court's reasoning, . . . [the 'strip-down' versus 'strip-off' distinction] is a distinction without a difference according to the majority of courts post-

Dewsnup. The analysis does not change depending on the available equity in the collateral to which the lien attaches."); In re Davenport, 266 B.R. 787, 790 (Bankr. W.D. Ky. 2001) ("We agree with the Fourth Circuit that Dewsnup's reasoning is equally applicable in a case where a debtor attempts to strip off a wholly unsecured consensual mortgage."); In re Cater, 240 B.R. 420, 423 (M.D. Ala. 1999) ("Although the lien at issue in Dewsnup was secured by at least some equity in the debtor's property, that factual distinction is not relevant. What is relevant is the Supreme Court's construction of § 506(d)."); In re Virello, 236 B.R. 199, 205 (Bankr. D. S.C. 1999) ("This Court . . . is of the opinion that for Dewsnup to have meaning, it must be applied to instances of 'strip off' of liens as much as it does to the 'strip down' of liens, the difference being primarily one of degree."); In re Swiatek, 231 B.R. at 29–30 ("Although in Dewsnup the claim was undersecured, not totally unsecured, we think the same result obtains under the Dewsnup rationale when the claim is completely unsecured in a chapter 7 and no objection to the claim has been filed and sustained.")).

The Sixth Circuit reasoned that to permit a "strip off" would depart from the pre-Code rule that "real property liens emerge from bankruptcy unaffected". In re Talbert, 344 F.3d at 561. In addition, the court agreed that the bargain struck between a mortgagee and a mortgagor––that the consensual lien would remain with the property until foreclosure—should apply with equal force in the case of a "strip down" and a "strip off". In this vein, the court approvingly noted the Supreme Court's rationale that the "fresh start" policy cannot justify an impairment of a mortgagee's property rights, because the fresh start is limited to a discharge of personal liability, rather than to an *in rem* claim against property. Finally, the Talbert court explained that the risk of a "windfall" to debtors in the case of an increase in the value of the property by the time of the foreclosure sale was as true in the context of "strip downs" as in Chapter 7 "strip

offs".  The Sixth Circuit was not blind to the "scholarly criticism" the <u>Dewsnup</u> decision had

endured.  "However, notwithstanding the dissatisfaction of some," the court found that it was

"not at liberty to ignore the Supreme Court's reasoning, which Congress has made no apparent

attempt to modify or correct through legislative action."  <u>Id.</u> at 561 (citing <u>Virello</u>, 236 B.R. at

204–05 (The "Supreme Court has interpreted the statute . . . and Congress has made no apparent

attempt to correct that interpretation or clarify the statute.  Under the doctrine of stare decisis,

this Court is constrained to follow . . . <u>Dewsnup</u>.  [To do otherwise] ... would effectively render

the Supreme Court's reasoning in <u>Dewsnup</u> meaningless.")).

After laying this foundation, the <u>Talbert</u> court found that although the current value of the

real property was insufficient to recover City Mortgage's junior lien, it was nonetheless "secured

in the ordinary sense, that is, . . . [it] is backed up by a security interest in property, whether or

not the value of the property suffices to cover the claim."  <u>Id.</u> (quoting <u>Cater</u>, 240 B.R. at 422).

Thus, it concluded that a Chapter 7 debtor such as the Talberts could not use 11 U.S.C. § 506 to

"strip off" an allowed junior lien where the senior lien exceeds the fair market value of the real

property.

As another example, in <u>Ryan v. Homecomings Fin. Network (In re Ryan)</u>, 253 F.3d 778

(4th Cir. 2001), the Ryans filed a joint voluntary Chapter 7 bankruptcy petition, requesting the

bankruptcy court to strip off a consensual, bargained-for second deed of trust securing a loan in

the amount of $47,305, payable to Sovereign Bank.  However, the residence was also subject to a

first deed of trust having a principal balance due of $181,826, although the property had a current

fair market value of only $179,000.  The Debtors argued that § 506(a) determined the secured

status of claims.  However, the <u>Ryan</u> court explored the Supreme Court's opinion in <u>Dewsnup</u>,

and explained that "[t]he reasoning in Dewsnup is not ambiguous. . . ." Id. at 781.  In particular,

the court stated that:

> Following the Supreme Court's teachings in Dewsnup, as we must,
> we discern no principled distinction to be made between the case
> *sub judice* and that decided in Dewsnup.  The Court's reasoning in
> Dewsnup is equally relevant and convincing in a case like ours
> where a debtor attempts to strip off, rather than merely strip down,
> an approved but unsecured lien.

Id. at 782.  The Fourth Circuit rejected any influence of Nobelman, finding that "[t]he decision in

no way affects the Court's ruling in Dewsnup, a Chapter 7 proceeding interpreting the

relationship between 11 U.S.C. §§ 506(a) and 506(d). . . We find no basis for divining language

in Nobelman that contradicts or modifies in any respect the clear holding of Dewsnup."  Id.

Thus, the Ryan court held that "an allowed unsecured consensual lien may not be stripped off in

a Chapter 7 proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d)."  Id. at 783.

Finally, nearly all the bankruptcy courts in this district and within the Second Circuit to

have confronted the issue have rejected the reasoning in the decisions underlying these appeals

and have instead embraced the majority position.  See, e.g., In re Caliguri, 431 B.R. 324, 327

(Bankr. E.D.N.Y. 2010) ("Post- Dewsnup courts have generally interpreted Dewsnup to prohibit

chapter 7 debtors from avoiding (stripping off) liens which are wholly undersecured for the same

reasons that a chapter 7 debtor may not reduce a secured mortgage claim to the fair market value

of the property (stripping down). . . . Such a reading or extension of Dewsnup is a proper and

consistent application of Section 506, and not inconsistent with the Second Circuit's decision in

In re Pond, 252 F.3d 122 (2d Cir. 2001).").

In In re Grano, the bankruptcy court recognized the debtors' position as "superficially

inviting" but nevertheless contradicting the clear authority of Dewsnup.  422 B.R. 401, 402

(W.D.N.Y. 2010).  Although the debtors contended that the court should adopt for Chapter 7 the

same exception that the Second Circuit recognized in <u>Pond</u> for Chapter 13—to the effect of permitting the avoidance of secondary liens that are totally undercollateralized—the court rejected that view because it overlooked the unique statutory predicate of Chapter 13. <u>See id.</u> at 403 ("In allowing a debtor in Chapter 13 to avoid a fully unsecured homestead mortgage, the decision in <u>In re Pond</u> utilized the authority of 11 U.S.C. § 1322(b)(2). No parallel provision applies in Chapter 7. Rather, the holding of <u>Dewsnup</u> . . . continues to bind debtors in Chapter 7. Notwithstanding the absence of equity beyond superior liens, the debtors may not here avoid the second mortgage of Wells Fargo Bank, N.A.").

Similarly, in <u>In re Pomillo</u>, another bankruptcy court in this district found that while the Bankruptcy Court's prior decision in <u>Lavelle</u>—which corresponds to the reasoning in the underlying bankruptcy proceedings at issue here—was "well reasoned" and finds support in a number of scholarly articles, the court was "nevertheless persuaded that it [was] constrained to apply <u>Dewsnup</u> to the facts of the case before [it]." 425 B.R. 11, 18 (Bankr. E.D.N.Y. 2010).

While there are certainly cases that adopt the Bankruptcy Court's minority view, many of them have been overruled or questioned. <u>Farha v. First Am. Title Ins. (In re Farha)</u>, 246 B.R. 547 (Bankr. E.D. Mich. 2000), <u>overruled by In re Talbert</u>, 344 F.3d 555 (6th Cir. 2003); <u>Zempel v. Household Fin. Corp. (In re Zempel)</u>, 244 B.R. 625 (Bankr. W.D. Ky.1999), <u>overruled by In re Talbert</u>, 344 F.3d 555 (6th Cir. 2003); <u>In re Yi</u>, 219 B.R. 394 (E.D. Va. 1998), <u>overruled by In re Ryan</u>, 253 F.3d 778 (4th Cir. 2001).

## F. **As to Whether Stripping Off a Wholly Unsecured Lien in Chapter 7 is Permitted Under § 506(d)**

The Appellants' positions, both currently unopposed, can be described as follows: they assert that the United States Supreme Court in <u>Dewsnup</u> has already held that in the Chapter 7 context, whether a lien is voided under 506(d), is not determined with reference to 506(a) and

thus is not a consequence of the value of the underlying collateral. Accordingly, they contend

that their liens attached to the relevant properties remain so throughout Chapter 7 bankruptcy, so

long as there is no liquidation of that asset, i.e., a foreclosure. The Appellees, though they have

not submitted briefs in either appeal, previously argued before the Bankruptcy Court that

whether a claim was stripped depended entirely upon 506(a), thereby disregarding any

distinction between the Chapter 7 and Chapter 13 contexts.

     Ultimately, this Court agrees with the majority of courts to have addressed the issue, and

is constrained to find that Dewsnup is controlling under the present circumstances. See In re

Talbert, 344 F.3d 555, 556 (6th Cir. 2003) ("Because the Supreme Court's reasoning in Dewsnup

v. Timm . . . applies with equal force and logic to the issue at hand, we hold that a Chapter 7

debtor may not use § 506 to "strip off" an allowed junior lien where the senior lien exceeds the

fair market value of the real property in question."). "[W]hether the lien is wholly unsecured or

merely undersecured, the reasons articulated by the Supreme Court for its holding in Dewsnup

. . .—that liens pass through bankruptcy unaffected, the mortgagee and mortgagor bargained for

a consensual lien which would stay with real property until foreclosure, and that any increase in

value of the real property should accrue to the benefit of the creditor, not the debtor or other

unsecured creditors—are equally pertinent." Laskin, 222 B.R. at 876.

     The Bankruptcy Court determinations below were premised on the Supreme Court's

interpretation of "secured" contained in § 506(a). However, although it is arguably an unusual

reading of the statute, it plainly appears that the Supreme Court intended the concept of

"secured" to have a specific definition in the Chapter 7 context, so that valuation of the

underlying collateral is irrelevant. See Cook, 432 B.R. at 527 ("Dewsnup expressly disregarded

valuation considerations in assessing whether a claim constituted an 'allowed secured claim' that

may be avoided under § 506(d), 'effectively negat[ing] any argument that 'allowed secured claim' means the same in § 506(d) as in § 506(a)'") (quoting In re Cunningham, 246 B.R. 241, 245 (Bankr. D. Md. 2000)).  The Bankruptcy Court utilized the directive from Nobelman that in a Chapter 13 case, to determine whether a claim can be modified, a court must look first to § 506(a).  However, the Supreme Court did not state that § 506(a) was to be followed in the Chapter 7 context as well.  See id., 432 B.R. at 528–29 ("In the Chapter 13 context, Nobelman requires resort to § 506(a) to determine whether a junior lienholder holds a secured claim for purposes of § 1322(b)(2).  In the Chapter 7 context, Dewsnup held that the definition of an "allowed secured claim" for purposes of § 506(d) was independent of the § 506(a) determination.").  If the Court meant to revise Dewsnup to include this analytic step in the Chapter 7 context, it would have expressly done so.

Although the lien at issue in Dewsnup was secured by at least some equity in the debtor's property, in light of the binding precedent, the Court disagrees that this distinction is dispositive. Rather, what is controlling is the Supreme Court's construction of § 506(d).  An "allowed secured claim" in § 506(d) does not denote a claim that is allowed and fully secured, but instead a "claim [that] is secured by a lien and has been fully allowed."  Dewsnup, 502 U.S. at 417, 112 S. Ct. at 778.  In other words, under the Supreme Court's guidance, "if a claim is secured in the non-bankruptcy sense, without regard to § 506(a)'s bifurcation of claims into secured and unsecured claims, and it is allowed in the bankruptcy case, it cannot be voided or stripped down by § 506(d)."  Harmon v. U.S. Through Farmers Home Admin., 101 F.3d 574, 580 (8th Cir. 1996).

With regard to the Second Circuit's decision in Pond, the Court declines to extend the holdings of Chapter 13 strip off cases to a Chapter 7 strip off case.  The Chapter 13 line of cases

all hinge upon a specific statutory scheme for avoiding wholly unsecured mortgage liens, which simply does not apply in the Chapter 7 context. Every one of the Chapter 13 cases cited by the Bankruptcy Court and the debtors deal with a claims allowance process—specifically, whether the claim in question is protected from modification, as secured only by debtor's residence, by § 1322(b)(2). "Those authorities do not support the free-standing lien avoidance sought here." In re Laskin, 222 B.R. 872, 875 (9th Cir. BAP 1998).

Moreover, it is difficult to extend holdings and rationales from one bankruptcy chapter to another. For instance, permitting lien striping in a Chapter 13 case would further the purpose and intent of that particular chapter in allowing and encouraging the repayment of creditors. However, in a Chapter 7 case, the purpose and intent is liquidation with the aim of the debtor to receive a discharge. Thus, to allow the strip off of wholly unsecured junior mortgages in Chapter 13 "better serves the policy imperatives of the Bankruptcy Code by encouraging debtors to first consult Chapter 13 before seeking either to reorganize pursuant to the more expensive and cumbersome Chapter 11 or liquidate pursuant to Chapter 7." In re Bartee, 212 F.3d 277, 294–95 (5th Cir. 2000); see also id. at 291 n.21 ("The rationales advanced in the Dewsnup opinion for prohibiting lien stripping in Chapter 7 bankruptcies . . . have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.").

In sum, the Supreme Court has held that "[b]ecause there is no question that the claim . . . has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured." Dewsnup, 502 U.S. at 415,

112 S. Ct. 773 (emphasis in original). This Court is constrained, as "there is no principled way to reconcile <u>Dewsnup</u> with a "strip off" of a wholly unsecured claim under § 506(d)." <u>Cook</u>, 432 B.R. at 527. Here, there is no question that both PNC's and Wachovia's claims are allowed and secured or "backed up" by executed and recorded mortgages. <u>See Cater</u>, 240 B.R. at 422. As noted in <u>In re Immel</u>, "[t]he collateral that [their] mortgage lien[s] cling[] to may be worth nothing, but there is no question that the underlying claim is an allowed secured claim for purposes of § 506(d)." 436 B.R. 538, 545 (Bankr. N.D. Ill. 2010).

Therefore, a Chapter 7 debtor may not use § 506 to "strip off" an allowed junior lien where the senior lien exceeds the fair market value of the real property in question. Accordingly, the Appellant's claims here may not be "stripped off" pursuant to § 506(d).

### III. CONCLUSION

The Bankruptcy Court's decisions reflect in many ways the more logical position, and the one that is supported by a large volume of legal commentary. <u>See, e.g.</u>, Michael Myers, <u>Dewsnup Strikes Again</u>, 53 Ariz. L. Rev. 1333 (2011). This Court agrees that "the minority cases opining that sections 506(a) and (d) must be read together, and concluding that in a Chapter 7 case, junior liens with no value underlying the claim may be avoided under § 506(d), are premised on sound principles of statutory interpretation, and would be controlling here if we were writing on a clean slate." <u>Cook</u>, 432 B.R. at 527. However, the Court is not operating in the absence of binding precedent. "Ultimately, the differing treatment of wholly unsecured mortgages on debtors' principal residences may need to be resolved by the circuits or possibly the Supreme Court. However, the case before the Court at this juncture is a Chapter 7 and not a Chapter 13 case." <u>In re Richins</u>, 469 B.R. 375, 380 (D. Utah 2012). Accordingly, this Court is bound by <u>Dewsnup</u> and its reasoning and must reach the conclusion it does herein. "While the

opinion may be the subject of scholarly criticism, it remains the law of the land." <u>Cunningham</u>,

246 B.R. at 246.

For the foregoing reasons, it is hereby:

      **ORDERED,** that the November 1, 2011 order of the Bankruptcy Court in the Wachovia

Appeal, 11-cv-6379, is REVERSED, and the June 13, 2011 order of the Bankruptcy Court in the

PNC Appeal, 11-cv-3832, is REVERSED, and both matters are REMANDED for further

proceedings consistent with this Memorandum of Decision and Order; and it is further

      **ORDERED**, that the Clerk of the Court is respectfully directed to mark both cases as

closed.

**SO ORDERED.**

Dated: Central Islip, New York
September 20, 2012

                                    _____*/s Arthur D. Spatt*_____
                                      ARTHUR D. SPATT
                             United States District Judge